**Rush PETTWAY and Peter J. Wrenn et al., Appellants,**

v.

**AMERICAN CAST IRON PIPE COMPANY, Appellee.**

**No. 25826.**

United States Court of Appeals Fifth Circuit.

May 22, 1969.

Rehearing and Rehearing En Banc Denied Oct. 7, 1969.

Oscar W. Adams, Jr., Birmingham, Ala., Leroy D. Clark, Robert Belton, New York City, for appellants.

J. R. Forman, Jr., Samuel H. Burr, Birmingham, Ala., J. Fredric Ingram and Thomas, Taliaferro, Forman, Burr & Murray, Birmingham, Ala., of counsel, for appellee.

Daniel Steiner, Gen. Counsel, Russell Specter, David R. Cashdan, Attys., EEOC, Washington, D. C., amici curiae-Equal Employment Opportunity Comm.

Before JOHN R. BROWN, Chief Judge, and RIVES and McENTEE *, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case involves a unique question arising under Title VII of the 1964 Civil Rights Act.[1] That question is whether a charge filed pursuant to § 704(a) of the Act (42 U.S.C.A. § 2000e–3(a)) prohibits an employer from discharging an

---

\* Of the First Circuit, sitting by designation.

1. For an interesting and informative compilation of legislative history of the Act, see BNA, The Civil Rights Act of 1964 (1964). See Jenkins v. United Gas Corp., 5 Cir., 1968, 400 F.2d 28, 32 n. 8.

employee for having made false statements in a request for reconsideration of his case before the Equal Employment Opportunity Commission claiming racial discrimination against him and fellow Negro employees. The District Court, finding that the statement was not privileged, upheld the discharge and refused to grant relief to the discharged employee. We reverse. Appellant here, Peter Wrenn, a Negro, had been employed by Employer, American Cast Iron Pipe Co. of Birmingham, Alabama, for some 17 years at the time of his discharge in September 1967. The Employer was willed in trust to the employees by its founder in 1924. The stock was left to a Board of Management and a Board of Operatives. Membership on the Board of Operatives and the Board of Management is limited to white male employees. Another board, called the Auxiliary Board, is limited to Negro male employees. The Auxiliary Board does not have a meaningful voice in matters of management but exists solely for the purpose of bringing to the attention of the Board of Operatives matters which affect Negro employees. Employer employs some 2700 employees, of whom 790 are Negro. None of the employees are represented by a labor organization. There are 12 members on the Auxiliary Board and 12 on the Board of Operatives. Each member serves for a 2-year term and 6 new members are elected each year. The race lines are preserved throughout. Only Negro employees vote for members of the Auxiliary Board and only white employees vote for members of the Board of Operatives. Wrenn, prior to his discharge, had been elected by his fellow Negro employees to serve 2 terms of 2 years each on the Auxiliary Board. He was serving his second 2-year term as a member of the Auxiliary Board and as chairman of that board at the time of his discharge.

The Company has been a contractor with the United States since the effective date of Executive Order No. 10925 signed by President Kennedy, and therefore has been under an obligation since 1961 to undertake an affirmative action program to eliminate discriminatory employment based on race or to institute affirmative action programs to assure equal employment opportunities to minority groups.[2] At least since 1963, Wrenn and other Negro employees have continuously and persistently sought relief from claimed racially discriminatory employment practices of Employer through various appeals to Federal agencies and officials. In November 1963—prior to the availability of Title VII—Wrenn sent a letter to the President of the United States alleging the continuance of serious racial discrimination by Employer. He received a reply from a Mr. Brimm, Chief Equal Employment Opportunity Officer, who came to Birmingham and investigated the charge and subsequently filed a no-cause finding. Wrenn and others continued to petition the President for relief. On March 30, 1965, the Committee For Equal Job Opportunity was organized by a majority of the Negro employees of Employer.

After the effective date of Title VII of the Civil Rights Act of 1964,[3] Wrenn, as Chairman of the Committee For Equal Job Opportunity, in addition to filing on his own behalf, assisted fellow Negro employees in the filing of numerous charges of employment discrimination. Several of those charges, including the one of Wrenn, formed the basis of *Pettway I*[4] recently decided by an-

---

2. BNA, The Civil Rights Act of 1964 (1964), 12, 369.

3. Title VII marks the first time that standards and practices for non-discrimination in employment were laid down by Congress rather than by presidential order. BNA, The Civil Rights Act of 1964

(1964) at 9–22; Jenkins, *supra*, 400 F. 2d at 32 n. 8.

4. This case was consolidated with four others for appeal: Hyler v. Reynolds Metal Co., No. 24789; Dent & EEOC v. St. Louis-San Francisco Ry., No. 24810; Muldrow v. H. K. Porter Co., No. 24811;

other panel of this Court. During the pendency of *Pettway I* in the Court below, Wrenn was suspended from his job for two weeks because of an alleged altercation with a white employee. In September 1966, Wrenn filed a charge with EEOC alleging that he had been suspended because of his race. In May 1967, Wrenn was advised by EEOC that his charge had been dismissed, because EEOC after investigation had concluded that his suspension did not constitute a violation of Title VII. However, Wrenn

Pearson v. Alabama By-Products Corp., No. 24812; and Pettway v. American Cast Iron Pipe Co., No. 24813. These consolidated cases were decided January 8, 1969, 406 F.2d 399.

The complaint filed in *Pettway I* was brought as a class action on behalf of the named Negro employees and all other Negro persons similarly situated and alleged that Employer limits the employment opportunities of Negro employees in the apprenticeship and journeyman programs, that Negro employees have been denied employment opportunities because of Employer's long-standing policy and practice of hiring Negroes only for certain job classifications and refusing to promote them out of these racially-restricted job classifications, and that Employer maintained racially-segregated rest rooms, lunch rooms, medical, dental facilities and recreational and charitable activities. The prayer for relief prayed that the Court enjoin Employer from continuing its policy and practice of limiting the employment opportunities of the plaintiff because of race.

These cases were dismissed by the District Court and the issue on appeal was whether conciliation efforts by EEOC are a jurisdictional necessity before a charging party may file suit in District Court. Reversing the District Court, we held that efforts at conciliation are not a prerequisite to filing suit. Our decision was presaged by the recent, thoughtful opinion of the Fourth Circuit in Johnson v. Seaboard Airline Railroad Co., No. 12154 and Walker v. Pilot Freight Carriers, Inc., No. 12155, 4 Cir., 1968, 405 F.2d 645 [No. 12154 & No. 12155, October 29, 1968]. Cf. Jenkins v. United Gas Corp., 5 Cir., 1968, 400 F.2d 28.

The chronology of *Pettway I*:
Filed Feb. 7, 1966
Dismissed Mar. 13, 1967
Appeal filed Apr. 7, 1967
Decided by 5 Cir. Jan. 8, 1969

was advised that he could submit additional information if he thought EEOC should reconsider its finding. It is the response to this invitation which is at the bottom of the present case. On July 13, 1967, Wrenn, in his capacity as Chairman of the Committee For Equal Job Opportunity wrote a letter to Stephens Shulman, Chairman of EEOC stating his objections to the May 1967 no-cause finding, and requesting further investigation.[5] EEOC, and later the

5. For ease of reference we have indicated parts of the letter with [1], [2], etc.
"Dear Sir:
[1] With reference to File Number 6–9–7604 (No. 6–10–171), I am in receipt of the Document Entitled "Commission's Decision". It is one of the most incredible decisions we have ever read. It places the whole program in the light of question. We have gone over the issue more than once and we cannot help but to conclude that it was bias on your part.
[2] In the first place you have listed two separate File Numbers which are charges of a different nature and time. How you got them together is something we would like to know. We are lead to believe you are trying to make a mountain "a mole hill". This may be possible but not in this world.
[3] Our Employer has openly defied the Civil Rights Act of 1964. The Chief Executive has more than once stated, seventy-five (75%) per cent of the Negro Employees would be eliminated. This statement is substantiated in the company's recent employment practice, which is most prevalent in hiring, upgrading and promotion.
[4] Having informed you more than once of the above mentioned statement we cannot help but to believe the company is receiving some type of cover-up protection for its unfair employment practices.
[5] The second factor which makes your decision most erroneous is the fact that neither of the three witnesses heard anything said by me (Peter J. Wrenn) or Gleen Limbough that night or any other night. Enclosed you will find an outline of the #1 Mono-Cast Pipe Plant. The distances between the witnesses and the place of the alleged incident is indicated. Your decision was so far removed, intentionally or otherwise, from the real issue we thought it would be enlightening in your effort of recon-

District Court, treated the letter as a timely filed petition for reconsideration. EEOC forwarded a copy of the letter to the Company in August 1967. On September 5, 1967, an official of Employer summoned Wrenn to his office, and upon ascertaining the authenticity of Wrenn's signature on the letter, permanently discharged Wrenn for making false and malicious statements about Employer in the letter. On September 13, 1967, Wrenn filed another charge with EEOC alleging that his discharge of September 5 was an act of reprisal for Wrenn's having previously filed charges of discrimination against Employer and that his discharge was based on discrimination because of his race.[6] Wrenn filed a petition in the District Court for injunctive relief on September 15, 1967, as an ancillary matter to *Pettway I* (No. 24813, see note 4 *supra*). The District Court concluded that since it had earlier dismissed that case for lack of jurisdiction, the case was not then pending so it did not have jurisdiction as an ancillary proceeding. However, the Court treated the motion as a new and independent action and after hearing, denied relief on the merits, ruling that the letter constituted serious, false charges and was not privileged.

■ We must first determine whether the District Court erred in refusing to treat Wrenn's motion as ancillary to *Pettway I.* We find that it did. Wrenn's motion for injunction pending appeal specifically invoked F.R.Civ.P. 62 (c). It plainly asserted that while *Pettway I* was pending in the District Court, Wrenn had been suspended by Employer for two weeks supposedly because of his involvement in an altercation with another employee, but that his later discharge actually resulted from charges filed with EEOC protesting that suspension, and that both the suspension and discharge were the result of Wrenn's continuing efforts to seek relief under Title VII from racially discriminatory employment practices assailed in *Pettway I.* Wrenn sought reinstatement to maintain the status quo pending determination of the question whether, in fact, the Company was in violation of Title VII. Regardless of the District Court's view concerning the necessity for conciliation efforts before suit could be filed,[7] the District Court did have

---

sideration to have some Graphical Illustration at your disposal.

[6] In summary, we believe somebody, some how got to Mr. Holliway, who investigated the case. We don't know what was done or offered him, but we do know it had to have been something, otherwise, your decision would not have been so far off base. Along this line, we had similar experiences with Dr. Hugh Brimm. This sort of thing makes it very difficult and discouraging for us. We have asked you more than once for concrete directioning in our effort.

 Very truly yours,
 /S/ Peter J. Wrenn
 Peter J. Wrenn, Chairman
 Committee for Equal Job
 Opportunity and
 Auxiliary Board of American Cast Iron Pipe Company
cc. The President
 The White House
 Washington, D. C.
P.S. Mr. Gleen Limbough is no longer with the Company because of his

involvement in a similar but much more serious incident. Save a thief from the gallow and he will cut your throat."

6. EEOC subsequently determined on February 27, 1968, that Wrenn's discharge violated § 704(a) of the Act (42 U.S.C.A. § 2000e–3(a)) and takes that position as amicus curiae on this appeal. See note 14 *infra.*

7. While hindsight given by our subsequent decision, see note 4 *supra*, demonstrates that the District Court erred in dismissing *Pettway I* and related cases for lack of jurisdiction, the handwriting was on the wall even before the *Dent* cases were decided on appeal. In *Jenkins, supra,* this Court considered, and decided an appeal from a District Court suit which was filed before any conciliation efforts had been undertaken by EEOC. We said: "But in keeping with the Act's short timetable EEOC gave notice (§ 706 (e); 42 USCA § 2000e–5(e)) that due to heavy workload, efforts at conciliation had not been undertaken and Employee was notified of his right (§ 706(e), (f);

jurisdiction of this motion for injunctive relief as ancillary to the case then pending on appeal.

That *Pettway I* was dismissed for want of jurisdiction, rather than on the intrinsic merits, is a matter of no consequence. Of course, the Trial Court could not, during the pendency of the appeal, take action with respect to the order then under review which would hinder or frustrate [8] determination by the Court of Appeals. But the case was a "pending" one, at least in the sense that if, as actually happened, the Court of Appeals differed with the District Court, the case would go back as a viable one from the very date of its filing.[9]

■ Several cases [10] give strong support to the conclusion that the Trial Court erred in failing to treat the petition as ancillary to *Pettway I*. *Pettway II* followed the traditional Title VII pleading seeking an injunction and reinstatement. *Pettway II* sought relief under F.R.Civ.P. 62(c). It is well settled that 62(c) is expressive of the power in the courts to preserve the status quo pending appeal.[11] Once power to act is established, it is equally plain that there was a need for the Trial Court to maintain the status quo and thus avoid the

possibility that *Pettway I* might become moot as to Wrenn.[12]

We therefore find that the District Court should have considered the motion as ancillary to *Pettway I*. Considering that the denial of a preliminary injunction was for nearly all practical purposes the ultimate determination of Wrenn's case on the merits—maybe as to both *Pettway I* as well as *II*—we look upon it in that light, uninsulated by the usual principle that tests a grant or denial of preliminary injunctions in terms of abuse of discretion. Here there were a number of reasons clearly calling for interim protection.

The question of charging party privilege is one of first impression under Title VII. The Employer's position, as we understand it, is that Wrenn's allegations contained in his July 13, 1967 letter to EEOC "constitutes a false and malicious accusation that [Employer] bribed or improperly influenced federal officers in the exercise of their official duties." The Employer maintains that it was knowingly and maliciously libeled and discharged Wrenn for that reason.

Wrenn, on the other hand, makes a dual response. First, he maintains that the allegedly offensive portion of the letter

---

42 USCA § 2000e–5(e), (f)) to file suit in Federal District Court." 400 F.2d at 30. Cf. Overnite Trans. Co. v. EEOC, 5 Cir., 1968, 397 F.2d 368; Oatis v. Crown Zellerbach Corp., 5 Cir., 1968, 398 F.2d 496.

8. Only those matters involved in the appeal are divested from jurisdiction of the lower court. Janousek v. Doyle, 8 Cir., 1963, 313 F.2d 916, 921.

 We do not consider the dicta in Corona Coal Co. v. Southern Ry., N.D. Ala., 1920, 266 F. 726, aff'd, 260 U.S. 698, 43 S.Ct. 91, 67 L.Ed. 470, as controlling, since it only affects the exercise of the court's discretion.

9. For an example of the flexibility available to the District Judge to prevent a case from getting beyond judicial redress, see Local 53 v. Vogler, 5 Cir., 1969, 407 F.2d 1047.

10. United States v. United Mine Workers, 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L. Ed. 884; Stewart v. Dunn, 5 Cir., 1966,

363 F.2d 591, 596; Wooten v. Ohler, 5 Cir., 1962, 303 F.2d 759; Tanner Motor Livery, Ltd. v. Avis, Inc., 9 Cir., 1963, 316 F.2d 804; Dunn v. Koehring, Co., 10 Cir., 1965, 348 F.2d 643, reversed, Koehring Co. v. Hyde Construction Co., 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416, on remand, Hyde Construction Co. v. Koehring Co., 10 Cir., 1968, 388 F.2d 501; Dunn v. United States, 10 Cir., 1968, 388 F.2d 511.

11. See United States v. El-O-Pathic Pharmacy, 9 Cir., 1962, 192 F.2d 62; Cumberland Telephone and Telegraph Co. v. Louisiana Public Service Commission, 1922, 260 U.S. 212, 219, 43 S.Ct. 75, 67 L.Ed. 217; Ideal Top Corp. v. Sayco Doll Corp., 2 Cir., 1962, 302 F.2d 623.

12. J. Weingarten, Inc. v. Potter, S.D. Tex., 1964, 233 F.Supp. 833; Fink v. Continental Foundry & Mach. Co., 7 Cir., 1957, 240 F.2d 369; Brotherhood of Locomotive Engineers v. Baltimore & Ohio R.R., 7 Cir., 1962, 310 F.2d 513, 516.

is a mere expression of personal opinion, conjecture, or arguing technique. Second, even if seriously libelous, the real cause for being fired was his prior activities in the civil rights movement within Employer's operations, not the letter. Wrenn claims that these statements, even if false, are protected under section 704(a) of the Act (42 U.S.C.A. § 2000e-3(a)), which clearly states that "it shall be unlawful employment practice for an employer to discriminate against any of his employees * * * because he has opposed any practice made an unlawful employment practice by this sub-chapter, or because he has made a charge * * * or participated * * * in an investigation, (or) proceeding * * * under the sub-chapter." We can assume that the Court found the letter was false and inaccurate because there was no evidence to support the bribery charge. However, it is not at all clear that the Court found the

letter motivated by malice. The District Court found that Wrenn was discharged for good and sufficient cause in no way motivated by an intention to retaliate for filing and prosecuting discriminatory employment charges, and that the discharge did not constitute an unlawful employment practice under § 704(a).[13]

■ It bears repeating, that EEOC, two months later, arrived at exactly the opposite conclusion. See note 6 *supra.* EEOC declared: "Charging party's statements were made in the exercise of his right under Title VII of the Civil Rights Act of 1964 to complain to this Commission and to avail himself fully of our power to hear, decide, and attempt to conciliate charges of job discrimination that are within our jurisdiction. * * * Reasonable cause exists to believe that the Respondent discharged Charging Party as an act of reprisal in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964 as alleged."[14] There

---

13. The District Judge found in his Conclusions of Law:

"2. An employer has the right to terminate for cause the employment relationship between it and an employee who wilfully, knowingly and maliciously accuses his employer falsely of bribing or causing to be bribed or otherwise improperly influenced a public official of the United States Government in the exercise of his official duties, a criminal offense under the statutes of the United States."

"3. Section 704(a) of the Civil Rights Act of 1964 does not prohibit [Employer] from discharging movant, Peter J. Wrenn, for the cause and under the circumstances disclosed by the evidence adduced at the hearing on movant's motion for injunctive relief."

And in his Findings of Fact:

"4. * * * [The letter] included false and untrue accusations, thinly veiled as conclusions but nonetheless effectively accusing [Employer] * * *."

"5. [The testimony] shows conclusively that [the letter] was signed and mailed when [Wrenn] had no basis in fact whatsoever which would justify his accusation * * *."

"6. * * * The copy of [Wrenn's letter] reached [Employer's] officers on August 31, 1967, and disciplinary action was promptly instituted against

[Wrenn], culminating in [Wrenn's] discharge from [Employer's] employ on the basis of the false charge of bribery made against [Employer] and its management in said letter * * * on September 5, 1967 * * *."

"8. The undisputed evidence presented to the Court establishes and the Court so finds that subsequent to the filing of the [*Pettway I*] charges the defendant has taken no act of reprisal or intimidation against any of its employees filing said charges and the [Employer] has upgraded some of [*Pettway I*] charging Negro employees, including [Wrenn], in their jobs with [Employer] as vacancies have occurred affording opportunities for upgrading."

"9. The Court finds that the discharge of [Wrenn] by [Employer] from employment on September 5, 1967, was for good and sufficient cause in no way motivated by an intention to retaliate or inflict reprisal against movant for filing and prosecuting any charge of discriminatory employment practice made by him and that such discharge did not contravene the provisions of, or constitute an unlawful employment practice under, Section 704(a) of the Civil Rights Act of 1964."

14. EEOC, decision, Wrenn v. American Cast Iron Pipe Co., Case Nos. 68-9-355 E, 6-9-7604, 6-10-171, February 27, 1968.

can be no doubt about the purpose of § 704(a). In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect his rights. The Act will be frustrated if the employer may unilaterally determine the truth or falsity of charges and take independent action.

This is particularly required under the machinery set up by Title VII. Unlike so many Governmental structures in administrative law, EEOC is an administrative agency without the power of enforcement. While it can subpoena witnesses, hold hearings, and attempt conciliation, it has no authority to issue orders or compel enforcement. More than that, except for the pattern or practice situation, (§ 707(a), 42 U.S.C.A. § 2000e–6(a)), in which the Attorney General may institute suit and intervention by him by leave of the court on the Attorney General's certification that the case is of general public importance, either on his own or in response to recommendation of EEOC, (§ 705(g) (6), 42 U.S.C.A. § 2000e–4(f) (6), Government does not enter the litigation. The suit is between private parties. The burden of enforcement rests on the individual through his suit in Federal District Court. But charges must first have been filed with EEOC. Consequently, the filing of charges and the giving of information by employees is essential to the Commission's administration of Title VII, the carrying out of the congressional policy embodied in the Act and the invocation of the sole sanc-

tion of Court compulsion through employee instituted suit. "Whether in name or not, the suit is perforce a sort of class action for fellow employees similarly situated." *Jenkins, supra,* 400 F.2d at 33. "When conciliation has failed— either outright or by reason of the expiration of the statutory timetable— that individual, often obscure, takes on the mantel of the sovereign." *Jenkins, supra,* 400 F.2d at 32.[15] This is often the only way that such issues can be raised—by an individual drafting his charge as best he can without expert legal advice.[16] This activity, essential as it is, must be protected. What the Supreme Court said in NLRB v. Burnup and Sims, Inc., 1964, 379 U.S. 21, 23, 85 S.Ct. 171, 173, 13 L.Ed.2d 1, 4, is certainly true here in a situation in which a single poor, ignorant employee with a grievance, not a sling shot in his hand, faces a huge industrial employer in this modern day David and Goliath confrontation:

"A protected activity acquires a precarious status if innocent employees can be discharged while engaging in it, even though the employer acts in good faith."

Both EEOC and Employer claim to find support for their view in a close examination of § 8(a) (4) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (4) and § 15(a) (3) of the Fair Labor Standards Act, 29 U.S.C.A. § 215 (a) (3) as an aid in interpreting § 704 (a) of Title VII.[17] While we find the

See note 6 *supra.* The District Court denied relief on December 21, 1967.

15. See Newman v. Piggie Park Enterprises, 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263.

16. *Jenkins, supra,* 400 F.2d at 30, n. 3. See United States v. Mayton, 5 Cir., 1964, 335 F.2d 153, 160–161.

17. Section 704(a) of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e–3(a) provides in part:
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or appli-

cants for employment * * * because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this title."
Section 8(a)(4) National Labor Relations Act, 29 U.S.C.A. § 158(a)(4) provides:
"8(a) It shall be an unfair labor practice for an employer:
(4) to discharge or otherwise discriminate against an employee because he has filed charges or

language of Title VII even broader [18] than that contained in the NLRA or the FLSA and hold that the courts must protect an individual filing charges with EEOC, we should emphasize that reliance on the Labor Acts for interpretive guidance must necessarily be guarded because the differences between those Acts and Title VII may well outnumber the similarities.[19] Notwithstanding these differences, abundant support can be found under such Acts for the conclusion here that protection must be afforded to those who seek the benefit of statutes designed by Congress to equalize employer and employee in matters of employment.[20]

---

given testimony under this chapter."

Section 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a)(3) provides:

"15(a) * * * It shall be unlawful for any person:

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any procedure under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

18. The protective provisions of Title VII are substantially broader than even those included in the Fair Labor Standards Act and the National Labor Relations Act in that, in addition to protecting charges and testimony, Title VII also specifically protects assistance and participation. This indicates the exceptionally broad protection intended for protestors of discriminatory employment practices. The protection of assistance and participation in any manner would be illusory if employer could retaliate against employee for having assisted or participated in a Commission proceeding.

19. Employer presses Linn v. United Plant Guard Workers, 1966, 383 U.S. 53, 55, 86 S.Ct. 657, 659, 15 L.Ed.2d 582, 586. However, that was a civil libel action brought under state law by a company official against an organizing union for damages caused by allegedly defamatory statements circulated by the union during an organizational campaign. The Supreme Court simply held that the National Labor Relations Act did not deprive the courts of jurisdiction to "apply state remedies if the complainant pleads and proves that the statements were made with malice and injured him."

The Supreme Court, in explaining its rationale that the federal interest in regulating labor relations and the State interest in redressing libel were mutually exclusive, noted that the Labor Board had adopted a policy of denying the protection of the LMRA to a party intentionally circulating defamatory or insulting material known to be false. According to the Court, protection of malicious libel under the "preemption doctrine" would be contrary to the congressional intent and the judicial interpretation of the Labor Act. See San Diego Building Trades Council, Millmen's Union, Local 2020 v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775. "[T]he labor movement," observed the Court in Linn, "has grown up and must assume ordinary responsibilities [to adopt procedures calculated to prevent malicious utterances of defamatory statements]." 383 U.S. at 63, 86 S.Ct. at 663.

Likewise, these cases, so strongly urged, are not decisive. Socony Mobile Oil Co. v. NLRB, 2 Cir., 1966, 357 F.2d 662; NLRB v. Coca-Cola Bottling Co., 7 Cir., 1964, 333 F.2d 181; Walls Mfg. Co. v. NLRB, 116 U.S.App.D.C. 140, 1963, 321 F.2d 753; Goldberg v. Bama Mfg. Corp., 5 Cir., 1962, 302 F.2d 152, 93 A.L.R.2d 603 to the effect that only false and inaccurate and not malicious statements are protected. However, these cases are clearly not controlling here as this case arose in an entirely different proceeding under an Act with an entirely different purpose and before an agency with an entirely different function and severely limited power.

20. See, e.g., Nash v. Florida Indus. Comm'n, 1967, 389 U.S. 235, 238, 88 S.Ct. 362, 365, 19 L.Ed.2d 438, 442. The Supreme Court said: "Congress has made it clear that it wishes all persons with information about such practices [unfair labor practices] to be completely free from coercion against reporting them to the Board."

For other examples of the protection afforded employees in the labor area see Wirtz v. Continental Finance and Loan Co.. 5 Cir., 1964, 326 F.2d 561; Mitchell v. De Mario Jewelry, 1960, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323, NLRB v. Whitfield Pickle Co., 5 Cir., 1967, 374 F.2d 576.

Congress, in Title VII, as did the Supreme Court in New York Times v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, sought to evaluate and balance the competing interests. On the one hand is the protection of the employer from damage caused by maliciously libelous statements and on the other is protection of the employee from racial and other discrimination. In Title VII Congress sought to protect the employer's interest by directing that EEOC proceedings be confidential and by imposing severe sanctions against unauthorized disclosure. Sections 706(a), 709(e), 42 U.S.C.A. §§ 2000e–5(a), 2000e–8(e). The balance is therefore struck in favor of the employee in order to afford him the enunciated protection from invidious discrimination, by protecting his right to file charges.

■ We hold that where, disregarding the malicious material contained in a charge (or petition for reconsideration, or other communication with EEOC sufficient for EEOC purposes, or in a proceeding before EEOC) the charge otherwise satisfies the liberal requirements of a charge,[21] the charging party is exercising a protected right under the Act. He may not be discharged for such writing.[22] The employer may not take it on itself to determine the correctness or consequences of it. Nor may the court either sustain any employer disciplinary action or deny relief because of the presence of such malicious material. We do not decide whether a writing purporting to be and to be used as a charge, which does not meet the requisites of a charge such as is required to set the

EEOC machinery in operation is protected. We leave that for another day and another court.

This letter (note 5 *supra*) for reconsideration was a good charge. In Parts [1], [2], [4], and [5] Wrenn, as Chairman of the Committee For Equal Job Opportunity clearly criticizes the internal operations of EEOC. Part [3] is a categorical allegation that Employer is violating the Act and intends to continue to violate the Act. Wrenn, and especially this Committee, were clearly entitled to make these charges. The District Judge did not say that Wrenn could be discharged for making these charges. With Parts [1], [2], [4], and [5] constituting arguably good charges deserving of EEOC investigation and later employee-instituted suit, the price is too high to permit the presence of Part [6] (later claimed or proved to be false or malicious) to allow the Employer to discharge the employee, and worse, throw out all of the charges with the awesome finality of a common-law demurrer. The Employee is not stripped of his protection because he says too much. If he says enough the Employee can suffer no detriment by virtue of having filed charges with EEOC which also contain false or malicious statements. By utilizing EEOC machinery he is exercising a protected right.

Since the Employee was discharged because he filed the charge and his request for reconsideration with EEOC, his discharge was a violation of § 704(a) and he must be reinstated and afforded other appropriate relief including appropriate back pay and such further pro-

---

21. *Jenkins, supra,* 400 F.2d at 30, n. 3.

22. We in no way imply that an employer is preempted by Section 704(a) from vindicating his reputation through resort to a civil action for malicious defamation. Cf. Linn v. Plant Guard Workers, 1966, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (LMRA) ; Salzhandler v. Caputo, 2 Cir. 1963, 316 F.2d 445, 451 (LMRDA). An employer, consistent with the language and the intent of Title VII, simply cannot avail himself of the retributive dis-

charge as a means of stifling minority group complaints to the EEOC. It may safely be assumed, though we do not so decide in the context of this case, that the malice test established in *Linn* would govern any libel action stemming from an EEOC proceeding in order to guard against possible abuse of such actions. 383 U.S. at 64–65, 86 S.Ct. 657. *See* New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

tective orders or injunctions as may be needed.[23]

The Trial Court found that Wrenn was not discharged by reason of racial discrimination (findings 6 and 9, note 13 *supra*). The Judge expressly found that he was discharged for having made the false, malicious statement in the charge (findings 4 and 9, conclusion 3, note 13 *supra*). On the Employer's own candid story, "when it received knowledge of the making by [Wrenn] of the false and malicious accusations of bribery against it, [Employer] instituted prompt disciplinary action and discharged [Wrenn] for this reason." [24] That discharge violated § 704(a) of the Act.

The case is reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

23. The District Court on remand shall determine the amount of back pay and other relief to be awarded in accordance with § 706(g), 42 U.S.C.A. § 2000e–5(g) :
"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay * * *. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. * * * "

24. Brief for Appellee, at 7.