EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Petitioner,

v.

UNITED ASSOCIATION OF JOURNEY-
MEN AND APPRENTICES OF the
PLUMBING AND PIPEFITTING IN-
DUSTRY OF the UNITED STATES
AND CANADA, LOCAL UNION NO.
189; and Mechanical Contractors Asso-
ciation of Central Ohio, Inc., Respond-
ents.

Civ. A. No. 69-160.

United States District Court,
S. D. Ohio, E. D.

Feb. 27, 1970.

See also D.C., 311 F.Supp. 468.

Russell Specter, Deputy Gen. Counsel,
Marian Halley, Washington, D. C., and
Charles L. Reischel, for petitioner.

R. Brooke Alloway, N. Victor Good-
man, and John J. Duffey, Columbus,
Ohio, for respondents.

OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the
motion of the plaintiff, the Equal Em-
ployment Opportunity Commission (the
Commission), to suppress, under the
provisions of Rule 32(c) (1) and (d) of
the Federal Rules of Civil Procedure,
certain proposed evidentiary material
because it was obtained in violation of
Section 704(a) of Title VII of the Civil
Rights Act of 1964 (42 U.S.C.A. §
2000e–3(a)), and because it was obtain-
ed in violation of Rules 26(a) and 30(a)
and (b) of the Federal Rules of Civil
Procedure.

The original petition in this case was
filed on May 21, 1969 and it seeks an
order of this Court holding the named
defendants in contempt of court for
violation of a prior Order of this Court
issued in the case of Gwylard W. Locke
v. United Association of Journeymen
and Apprentices of the Plumbing and
Pipefitting Industry of the United
States, Local 189, et al, Civil Action No.
68–148 (S.D.E.D.Ohio 1968). Attached
to this petition were affidavits of cer-
tain Negro plumbers in the Columbus,
Ohio area which recited facts offered
in support of the allegations of violations
of Title VII that were contained in the
petition.

Subsequently, on November 10, 1969,
the Commission filed a motion for sum-
mary judgment as to certain issues pre-

sented by the petition and the defendant Local 189 filed its opposition to this summary judgment motion on December 16, 1969. Attached to the defendant's memorandum contra, as appendices V through X, were certain documents individually entitled "Reports of Conversations." These documents are the subject of the instant motion to suppress.

In a hearing held on this matter on February 24, 1970, testimony concerning the circumstances surrounding the taking of these conversations was elicited. On June 19, 1969, an attorney for the respondent union, accompanied by the business agent for the union and a stenotype reporter, called upon certain of the Negro plumbers who had submitted their affidavits in order to check out and refute certain facts and implications contained in the affidavits.

In each case, the procedure followed in questioning these individuals was essentially the same. The three aforementioned persons would arrive at a construction site where Dudley Steiner, the business agent of the union, would ask the foreman on the site to summon a designated person so that he might be questioned. The workman, complying with the request of his employer, would then proceed away from his work area and meet with the business agent, the attorney and the stenotype reporter. Generally this meeting took place in the company owned trailer which was situated on the construction site and was used as an office. After introductions and some preliminary statements were made to the workman, the stenotype reporter would administer an oath and the questioning process would begin. The forms of the questions propounded, although generally not accusatory or hostile in nature, were leading and sometimes impeaching, such that this Court finds that the examination became essentially a cross-examination of the witness. Upon completion of the questioning, the witness was excused and resumed his normal work. None of the witnesses received copies of the transcript of his answers.

The nature of the remedy sought by the instant motion is unusual. Motions to suppress proposed evidentiary material generally appear in criminal proceedings only, and even then are usually permitted only upon a showing of a violation of some constitutionally secured right. The authority cited by the Commission in support of this motion is Rule 32 of the Federal Rules of Civil Procedure. This rule reads:

### Rule 32

### Effect of Errors and Irregularities in Depositions

(a) *As to Notice.* All errors and irregularities in the notice for taking a deposition are waived unless written objection is promptly served upon the party giving the notice.

(b) *As to Disqualification of Officer.* Objection to taking a deposition because of disqualification of the officer before whom it is to be taken is waived unless made before the taking of the deposition begins or as soon thereafter as the disqualification becomes known or could be discovered with reasonable diligence.

(c) *As to Taking of Deposition.*

(1) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(2) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless seasonable objection thereto is made at the taking of the deposition.

(3) Objections to the form of written interrogatories submitted

under Rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other interrogatories and within 3 days after service of the last interrogatories authorized.

(d) *As to Completion and Return of Deposition.* Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared, signed, certified, sealed, indorsed, transmitted, filed or otherwise dealt with by the officer under Rules 30 and 31 are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained.

The disallowance of irregular depositions as evidence is not a novel proposition of law, as shown by the specific provisions of Rule 32, supra, and case law. See Mims v. Central Mfrs. Ins. Co., 178 F.2d 56 (5th Cir. 1949). The vehicle of a motion to suppress testimony obtained by means of an irregular deposition has been expressly recognized by the Sixth Circuit. See Oates v. S. J. Groves & Sons Company, 248 F.2d 388 (6th Cir. 1957).

The respondent union contends that the rules relating to the taking of depositions are not applicable to the instant situation because the documents involved are merely transcriptions of voluntary conversations between counsel for the union and various of the Negro plumbers who had been referred from the union's hiring hall. The Court finds that the use of the term "conversations" in the context of these transcriptions is a mere euphemism and the use of that term belies the essential nature of the transcriptions.

Realistically viewed, the circumstances reveal that Negro plumbers of limited education, and who have undoubtedly had considerable trouble, for whatever reasons, obtaining plumbing work in the Columbus, Ohio area through the hiring hall of the respondent union, were told by their employer that an attorney from the union wanted to question them. Then, after being confronted by the business agent of that same union and being isolated in a company owned trailer, these same individuals were asked to "voluntarily" answer some questions concerning charges of discrimination levelled against the union. The presence of a stenotype reporter and the administration of an oath were additional factors added to the situation. However subtle they may be, the psychological pressures exerted upon these individuals, in view of the total power held jointly by the respondent union and the employer over their present and future job prospects, lead this Court to the inescapable conclusion that the circumstances under which these conversations were held were coercive by their very nature and any statement made during the course thereof cannot be said to be truly voluntary.

Further, Congress has recognized the inherent unfairness present in a situation like the one presented in the instant case. Section 704(a) of Title VII of the Civil Rights Act of 1964 provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title. 42 U.S.C.A. § 2000e–3(a).

Research has revealed only one case which discusses this particular provision of the Civil Rights Act of 1964. In Pettway v. American Cast Iron Pipe Company, 411 F.2d 998 (5th Cir. 1969), the court was faced with the discharge of an employee, allegedly for making false statements during the course of his

charges of discrimination against his employer. Recognizing fully the extreme importance of avoiding the sanction of any penalty for the assertion of rights secured by federal statute, the *Pettway* court reversed the district court and held that since the employee was discharged because he filed the charge and his request for reconsideration with the Commission, his discharge was in violation of Section 704(a) of the Act. The court in *Pettway* made a further analogy between Section 704(a) and certain provisions of the National Labor Relations Act, 29 U.S.C.A. § 141 et seq.

> While we find the language of Title VII even broader than that contained in the NLRA or the FLSA and hold that the courts must protect an individual filing charges with EEOC, we should emphasize that reliance on the Labor Acts for interpretive guidance must necessarily be guarded because the differences between those Acts and Title VII may well outnumber the similarities. Notwithstanding these differences, abundant support can be found under such Acts for the conclusion here that protection must be afforded to those who seek the benefit of statutes designed by Congress to equalize employer and employee in matters of employment. (citing cases) *Pettway*, *supra*, 411 F.2d at 1005–1006.

Commenting further, the court said:

> The protective provisions of Title VII are substantially broader than even those included in the Fair Labor Standards Act and the National Labor Relations Act in that, in addition to protecting charges and testimony, Title VII also specifically protects assistance and participation. This indicates the exceptionally broad protection intended for protestors of discriminatory employment practices. The protection of assistance and participation in any matter would be illusory if employer could retaliate against employee for having assisted or participated in a Commission pro-

ceeding. *Pettway*, *supra*, 411 F.2d at 1006 fn. 18.

This Court is persuaded that the analogy drawn by *Pettway* is a valid one and that case law dealing with Section 8(a)(4) of the National Labor Relations Act (29 U.S.C.A. § 158(a)(4)) is helpful in determining the interpretation to be given a similar provision in Title VII. See Nash v. Florida Industrial Commission, 389 U.S. 235, 88 S.Ct. 362, 19 L.Ed.2d 438 (1967) and cases cited therein.

In view of the expressed intent of Congress in opting for substantial protection of those persons who would participate in the filing of charges of discrimination with the Commission, and in view of the coercive nature of the manner in which the so-called "conversations" were obtained, the Court determines that to allow their use in this case would directly frustrate one of the essential objectives of the Civil Rights Act of 1964. Employees who may feel that discriminatory practices are being engaged in by their employer would hesitate to file charges with the Commission if they felt that there would result therefrom conduct on behalf of the charged party such as exists in the instant case. By utilizing the statutorily established machinery of the Equal Employment Opportunity Commission an employee is exercising a protected right and this Court cannot permit conduct which would tend to infringe on that right to be practiced with impunity. See Hughes & Hatcher, Inc. v. NLRB, 393 F.2d 557 (6th Cir. 1968) and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W.–A.F.L.–C.I.O. v. NLRB, 392 F.2d 801 (D.C. Cir. 1968).

If the respondent union wished to test the veracity of the factual recitations of the affidavits attached to the petition in the instant case, the vehicle of a deposition under Rule 26 of the Federal Rules of Civil Procedure, with all its attendant safeguards, was available and would have at least afforded an opportunity for the Commission to insure that the

testimony of these Negro plumbers would be elicited in circumstances substantially less coercive in nature than existed herein. The Court determines that these Reports of Conversations were essentially depositions, illegally taken, and that their suppression is warranted under Rule 32 of the Federal Rules of Civil Procedure.

Whereupon, the Court determines that the motion of the Commission is meritorious and therefore it is granted. It is ordered that the Reports of Conversations, attached as Appendices V through X to the Memorandum Contra of the respondent union to the Commission's motion for summary judgment, be and the same are hereby suppressed.

It is further ordered that these documents, heretofore suppressed, be and they are hereby prohibited from being used in the instant case for any purpose whatsoever.