Barbara J. SMITH, Plaintiff,

v.

COLUMBUS METROPOLITAN HOUSING AUTHORITY, Defendant.

No. C–2–75–830.

United States District Court,
S. D. Ohio, E. D.

June 21, 1977.

John W. E. Bowen, Columbus, Ohio, for plaintiff.

David W. Fais, Columbis, Ohio, for defendant.

## OPINION

DUNCAN, District Judge.

This Civil action, brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., is before the Court for a decision on the merits following trial. The Court sets forth its findings of fact and conclusions of law in this opinion, in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Plaintiff Barbara Smith Hensley, a black woman, was employed by defendant Columbus Metropolitan Housing Authority in May 1957, and with the exception of a nine-month absence, has worked for the Authority continuously until the present. She was assigned positions of increased responsibility over the years; from 1965 until she was demoted by defendant on April 29, 1974, she was supervisor of defendant's rental office.

Early in 1974 defendant discharged three black male employees, one of whom, Mr. Harry Peck, filed charges of employment discrimination against defendant with the Ohio Civil Rights Commission, which is a state deferral agency under Title VII, see 42 U.S.C. § 2000e–5(c) and 29 C.F.R. § 1601.12(m). An investigator for the OCRC visited Mr. Patrick McSweeney, defendant's personnel director, and discussed the pending charge. When Mr. McSweeney indicated that Harry Peck's discharge was part of a reduction in force which had been discussed at a January 1974 staff meeting at which no minutes were made, the investigator suggested that defendant secure affidavits from persons who attended the meeting.

At a regular staff meeting of April 22, 1974, Mr. McSweeney informed defendant's administrative staff, including plaintiff, of the pending charges of Harry Peck, and he told the staff that he wanted those who were present at the January 1974 staff meeting to sign an affidavit concerning what had occurred. Two or three days after the April 22 meeting, plaintiff was told to go to the office of Patrick Feeney, defendant's executive director. Mr. Feeney's secretary had a number of affidavits, one of which she presented to plaintiff. The text of the affidavit is set out in the margin.[1]

Plaintiff returned the affidavit to Mr. McSweeney unexecuted. She told him that the part of the affidavit which concerned a reduction in staff was true, but that she did not want to sign the statement. When she later saw Executive Director Feeney, he asked her into his office. He was highly displeased by her refusal to sign the statement under oath. He told her he wanted loyalty and cooperation from administrative personnel. Plaintiff responded that she did not participate in the discharge decision, that it had merely been announced at the January 1974 staff meeting. She also told Mr. Feeney that she was unsure whether Harry Peck had been employed "in the field of Security," as the affidavit implied. Mr. Feeney viewed her refusal to sign as a reluctance to participate in top staff level decisions; effective April 29, 1974, he had her demoted from her $12,500 per annum position as supervisor of the rental office to a $9,400 per annum position as housing manager at a senior citizen complex, Taylor Terrace.[2]

The Court finds that plaintiff was demoted on April 29, 1974, solely because she

---

1. Barbara Smith, being first duly cautioned and sworn, says that during the month of January, 1974, discussions were held in the staff meetings at Columbus Metropolitan Housing Authority, 272 South Gift Street, Columbus, Ohio, in the Board Room of the Authority, regarding the reduction of the operating deficiency. It was the consensus of the staff of Columbus Metropolitan Housing

Authority at these meetings that a portion of this deficit could be recovered through the reduction of personnel in the field of Security.

2. At the time of trial, plaintiff was earning $11,500 per annum as assistant coordinator of defendant's Home Ownership Department.

refused to sign the affidavit which Patrick McSweeney had drafted. I specifically reject defendant's suggestion that a December 1973 incident involving the mailing of Christmas cards by plaintiff had a bearing upon the demotion decision. The December 1973 incident was over when plaintiff returned to work following a two-week disciplinary suspension; but for the incidents of late April 1974, plaintiff would have remained supervisor of the rental office.

Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), provides, in pertinent part,[3] as follows (emphasis added):

> It shall be an unlawful employment practice for an *employer* to discriminate against any of his employees . . . *because he has* made a charge, testified, assisted, or *participated in any manner in an investigation*, proceeding, or hearing *under this subchapter*.

Under the 1972 amendments to Title VII, Pub.L. 92–261, defendant is an "employer" under the Act, see 42 U.S.C. § 2000e(b), (f) and (h); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 98 S.Ct. 2666, 49 L.Ed.2d 614 (1976). An investigation undertaken by a state deferral agency such as the Ohio Civil Rights Commission is "an investigation . . . under this subchapter," see *Equal Employment Opportunity Commission v. Kallir, Philips, Ross, Inc. [Kallir I]*, 401 F.Supp. 66, 71 n. 12 (S.D.N.Y.1975). The question presented here, then, is whether demoting plaintiff because she refused to make the sworn statement was demoting her because she "assisted or participated in any manner" in the pending OCRC investigation. In *Kallir I*, 401 F.Supp. at 71, Judge Weinfeld emphasized the sweeping scope of the statutory phrase, "in any manner."

■ Defendant Columbus Metropolitan Housing Authority, then a respondent in a proceeding before the OCRC, asked plaintiff, its employee and a material witness in the OCRC matter, to swear to a statement drawn by defendant's personnel director as support for defendant's version of a challenged discharge. Although I view the question as a difficult and unsettled one under the Act, I hold that the broad statutory prohibition against retaliation for participating in *any* manner in a pending investigation includes the retaliation directed toward plaintiff Barbara Smith Hensley on April 29, 1974.

The Supreme Court of the United States has not addressed the question raised here, *cf. McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) *with Emporium Capwell Company v. Western Addition Community Organization*, 420 U.S. 50, 71 n. 25, 95 S.Ct. 977, 43 L.Ed.2d 12 (1975). In *Equal Employment Opportunity Commission v. United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local No. 189 [Plumbers' Union]*, 311 F.Supp. 464 (S.D.Ohio 1970), the EEOC petitioned the district court for an order holding the local union in contempt of an injunctive decree entered in another case. The petition was supported by affidavits of a number of black plumbers who were members of the respondent local union. An attorney for the respondent union, accompanied by the union's business agent and a stenotype reporter, went to the averring members' job site, pulled the members off the job, and asked them questions under oath concerning their affidavits. In granting EEOC's motion to suppress evidence garnered by the respondent in this fashion, Judge Kinneary held that the local union's unilateral and unofficial inquiries violated § 704(a) of the Act, 42 U.S.C. § 2000e–3(a). *Plumbers' Union*, 311 F.Supp. at 467.

---

**3.** 42 U.S.C. § 2000e–3(a) in its entirety provides as follows:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

EEOC Decision No. 71–2312, EPD ¶ 6248 (1971) is also factually similar to the present case. There, the charging party was an employee who refused "to testify in exculpation of her employer." The EEOC held that "retaliation for participating in Commission proceedings—*or refusal to participate*—resulting in resignation, constitutes a violation of Section 704(a) of Title VII." (Emphasis added.)

Investigations undertaken by the EEOC or a state deferral agency pursuant to Title VII are intended to determine the truth or falsity of charges of employment discrimination. The Ohio Civil Rights Commission is required upon the filing of a charge to determine whether or not it is "probable that unlawful discriminatory practices have been or are being engaged in." R.C. 4112.-05(B). The EEOC is similarly required to decide whether or not there is "reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e–5(b). If an employee has personal knowledge which is relevant to a charge filed with a Title VII agency, his first participation in the investigation will likely result when he is approached by one of the interested parties: the charging party, the respondent, or the Title VII agency.

Once a charge is filed, the charging party is no longer simply an employee, and the respondent is no longer simply an employer. Both are parties to a Title VII agency proceeding, and both have lawful avenues provided by statute, rule, or regulation by which to discover information pertinent to the pending proceeding, cf. *Plumbers' Union*, 311 F.Supp. at 467–68. When an employee is approached on an informal, ex parte basis by one of the parties to such a proceeding and is asked to relate personal knowledge concerning the subject matter of the charge, that employee must decide whether to cooperate on such a basis with the inquiring party. The question is not whether the employee's version of pertinent facts can ever be developed, because relevant, unprivileged testimony can be compelled before a Title VII agency, see 42 U.S.C. § 2000e–9; 29 U.S.C. § 161; R.C. 4112.04(B)(3); R.C. 4112.11(A). Rather, the question is whether the employee will cooperate on an informal basis by orally relating his personal knowledge or by signing a sworn or unsworn statement.

Because anything the employee relates is potentially impeachment material should he later change his version of events, the employee's decision whether to cooperate is one which affects his participation in the pending proceeding. Whether an employee agrees or refuses to cooperate, his participation in the pending Title VII investigation and proceeding has begun.

I hold, then, that whether an employee decides to assist the charging party, or refuses to assist the respondent employer, the employer may not retaliate against the employee, because this decision of the employee constitutes participation in an investigation or proceeding under Title VII. To permit employers to accumulate exculpatory evidence during the prehearing phase by wielding the control they exercise over employees' job security certainly violates the spirit of Title VII, which contemplates that allegations of discriminatory employment practices will be litigated before the appropriate agencies and courts, not before the supervisory staff of the respondent employer.

In *Pettway v. American Cast Iron Pipe Company*, 411 F.2d 998, 1006 n. 18, *rehearing denied* 415 F.2d 1376 (5th Cir. 1969), the United States Court of Appeals for the Fifth Circuit noted that unlike similar provisions in the Fair Labor Standards Act and the National Labor Relations Act, § 704(a) of Title VII "specifically protects assistance and participation." That Court went on:

> This indicates the exceptionally broad protection intended for protesters of discriminatory employment practices. The protection of assistance and participation in any manner would be illusory if employer could retaliate against employee for having assisted or participated in a Commission proceeding.

The Fifth Circuit in *Pettway* held that the § 704(a) protection extended even to an employee who included false and malicious statements in his charging papers; it stated

that the employer "may not take it on itself to determine the correctness or consequences of" statements made in the charge. 411 F.2d at 1007.

Defendant misses the point when it couches plaintiff's demotion in terms of her alleged disloyalty or insubordination. The Act protects an employee who refuses to assist a respondent employer in the preparation of its defense, just as it protects an employee who refuses to change his religious affiliation at the demand of his employer. Either refusal could be cast as disloyalty or insubordination; neither can be the basis for discrimination against the employee.

Courts hearing Title VII cases have been struggling to resolve conflicts between the right of employers to employee loyalty and the right of employees to engage in activity protected by Title VII. *Cf. Hochstadt v. Worcester Foundation for Experimental Biology*, 545 F.2d 222, 230–234 (1st Cir. 1976) *with Equal Employment Opportunity Commission v. Kallir, Philips, Ross, Inc. [Kallir II]*, 420 F.Supp. 919, 926–27 (S.D.N.Y.1976). I hold that the balancing test applied by the *Hochstadt* court, 545 F.2d at 231, and by the *Kallir I* court, 401 F.Supp. at 71–72, is not applicable under the facts of this case. Mrs. Hensley's refusal to make a sworn statement did not disrupt the normal business activities of defendant.

This Court does not hold that a respondent in a Title VII proceeding may never seek the assistance of noncharging employees. Nor does the Court hold that an employee may never be disciplined for refusing to assist a respondent in its defense. I hold only that under the facts of this case plaintiff's April 29, 1974, demotion was unlawful under § 704(a) of the Act, 42 U.S.C. § 2000e–3(a), because it constituted retaliation by defendant for plaintiff's decision not to participate in a pending investigation and proceeding in the manner that defendant desired.

The Court perceives no reason on this record why plaintiff should not be restored to her former position with back pay, as she requests. 42 U.S.C. § 2000e–5(g); *Kallir II,*

*supra*, 420 F.Supp. 919. Plaintiff may also recover an award of attorneys fees as part of her costs. 42 U.S.C. § 2000e–5(k). She is not entitled to compensatory or punitive damages. *Compston v. Borden*, 424 F.Supp. 157 (S.D.Ohio 1976).

Plaintiff will submit a schedule of back pay and attorneys fees within twenty (20) days. Defendant may file objections to the schedule within fifteen (15) days of filing. Thereafter, the Court will enter final judgment in favor of plaintiff Barbara Smith Hensley and against defendant Columbus Metropolitan Housing Authority.