**Michael PROULX, Plaintiff,**

v.

**CITIBANK, N.A., Defendant (Two Cases).**

Nos. 84 Civ. 8156–CSH, 85 Civ. 4348–CSH.

United States District Court, S.D. New York.

May 14, 1987.

BLS Legal Services Corp., Federal Litigation Program, Brooklyn, N.Y., for plaintiff; Minna J. Kotkin, Diane Bradley, Legal Intern, Debra Harris, Legal Intern, of counsel.

Proskauer Rose Goetz & Mendelsohn, New York City, for Citibank; Bettina B. Plevan, Henry J. Kelston, Myron D. Rumeld, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This action, which had its origin in a charge of employment discrimination based on sexual harassment, is now narrowed to

a charge of retaliatory discharge brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq.* (the "Act").[1] Plaintiff moves pursuant to Fed.R.Civ.P. 56(d) for partial summary judgment on his claim of retaliatory discharge.

## I.

Plaintiff Proulx was hired by defendant Citibank in July, 1982, as a warehouseman. Robert Ganey, an Assistant Manager in the Electronic Processing Systems Investigations area of Citibank's Consumer Services Group, was Proulx's direct supervisor during Proulx's tenure at Citibank. Proulx claims that he was subject to verbal and physical sexual harassment by Mr. Ganey on numerous occasions. Proulx also asserts that his repeated rejections of Ganey's sexual advances led Ganey to impose conditions of employment that made it difficult for Proulx to perform his job efficiently.

On October 26, 1982, Proulx filed a complaint with the New York Division of Human Rights ("NYSDHR") alleging sexual harassment and employment discrimination based on his sex.[2] Proulx delivered a copy of this complaint, together with a ten page statement specifying alleged incidents of harassment, to Nicholas Venezia, Ganey's supervisor.

Citibank responded to Proulx's charges with an offer to transfer him from the warehouse job to a clerical job with an identical salary. Proulx declined the offer, and was discharged.[3]

Proulx contends that he was discharged in retaliation for his sexual harassment complaint. He prays for summary judgment on his claim of retaliatory discharge. Resisting summary judgment for retaliatory discharge, Citibank claims that Proulx was discharged "for falsely and ma-

liciously accusing Mr. Ganey of sexual harassment in the documents submitted to Mr. Venezia and the NYSDHR,"[4] and alternatively, that whether Proulx was discharged for filing a complaint with the NYSDHR is a disputed issue of fact.

The case is governed by section 704(a) of the Act, 42 U.S.C. § 2000e–3(a), which provides in pertinent part:

"It shall be an unlawful employment practice for an employer to discriminate against [an employee] ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter."

If the reason for Proulx's discharge is indeed the subject of a genuine factual dispute, Proulx's motion must fail. If there is no genuine dispute on the facts—in other words, if the facts which are undisputed or conceded *arguendo* show that Proulx was discharged for maliciously accusing his supervisor of sexual harassment—a question of law is presented: whether Title VII's statutory protection against retaliatory discharge extends to an employee who maliciously pursued false claims. For reasons explained below, I find that no genuine factual dispute exists; that section 704(a)'s protection against retaliation extends to malicious and false claims; and that Proulx is accordingly entitled to summary judgment.

## II.

Whether Proulx's complaint of sexual harassment is false and was filed with malice is a hotly contested issue of fact. For the purposes of this motion, however, Proulx is willing to concede that his com-

---

**1.** Proulx, proceeding *pro se,* instituted two separate actions, one for sexual harassment (84 Civ. 8156–CSH) and the other for retaliatory discharge (85 Civ. 4348–CSH). Proulx's application for appointment of counsel was granted by order dated March 13, 1985.

**2.** Filing a complaint with the NYSDHR constitutes initiation of 'proceeding' under Title VII in

compliance with 42 U.S.C. § 2000e–5. *See also,* 29 C.F.R. 1601.80 (list of designated State agencies certified by the Commission).

**3.** After his discharge, Proulx filed a second complaint with the NYSDHR. *See* note 1, *supra.*

**4.** Def. Mem. p. 3

plaint was malicious. *See* Main Brief at 22. Citibank contends that, even with Proulx's concession, a factual dispute exists as to "[w]hether or not defendant Citibank discharged plaintiff for filing a complaint ..."[5]

Under Rule 56, the moving party bears the burden of showing, through appropriate affidavits or otherwise, that judgment in his favor is warranted on the undisputed facts. The party opposing summary judgment "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." F.R.Civ.P. 56(e).

In the present case, Proulx has supported his motion on the issue of the reason for his discharge with his own affidavit; a copy of an administrative agency's decision on the reason for his discharge; and with a document containing a statement by a Citibank employee concerning the reason for Proulx's discharge.

██ Proulx avers that Mr. Spitzer, an Assistant Vice President at Citibank, informed him that he "... was being fired because [Citibank was] unable to substantiate ..." his complaint of sexual harassment. Proulx Aff. ¶ 10. The Unemployment Insurance Appeal Board, reviewing an administrative law judge's determination that sustained denial of unemployment benefits to Proulx, found that Proulx "... was discharged because [Citibank] could not substantiate [Proulx's allegations of sexual harassment] and because [Citibank] believed that the working environment was strained and the situation was not good for employee-supervisory relations." Proulx Aff. Exhibit K.[6]

5. Def. 3(g) statement, ¶ 2.

6. Employer action which is only partially in retaliation against protected activity is prohibited by § 704. *Sims v. Mme Paulette Dry Cleaners,* 580 F.Supp. 593, 595 (S.D.N.Y.1984) Proulx argues that the Unemployment Insurance Appeals Board's findings on the reason for his discharge should have collateral estoppel effect in this action, and therefore that Citibank should be precluded from re-litigating the issue of the reason for Proulx's discharge. I do not

And, finally, Proulx submits a letter dated September 13, 1983 from Joanne K. Sundheim, another Assistant Vice President of Citibank, to the NYSDHR, which purports to "present the position of Citibank, N.A. ... regarding [Proulx's complaint of sexual harassment]." In the letter, Ms. Sundheim states that Proulx was discharged "[d]ue to the false, vicious nature of the accusations" he made against Ganey.[7]

In sum, Proulx has amply supported his motion on the issue of the reason for his discharge. Each of the statements discussed above embody admissible evidence to the effect that Proulx was discharged because Citibank could not substantiate his charge of sexual harassment. Ms. Sundheim's statement to the NYSDHR regarding Proulx's malicious intent in making the complaint is, for the purpose of this motion only, conceded to be true. Ms. Sundheim's letter thus is indistinguishable from the rest of Proulx's evidence showing that he was discharged because of his concededly (for the purpose of this motion) malicious complaint of sexual harassment.

In response to this evidence, Citibank refers to two documents.[8]

The first is a letter dated November 21, 1983, from Ms. Sundheim to the NYSDHR, purportedly "clarifying" Citibank's position on why Proulx was discharged. The letter states:

> "[Proulx] was not discharged for filing a complaint against Ganey ... Rather, he was discharged because he accused Ganey of harassing him, with the knowledge that the accusation was false.[*]

[*] This clarifies our September 13, 1983 response to [the NYSDHR], in which this aspect was unclear. Thus, Citibank acknowledges that

have occasion to decide the possible preclusive effect of the Board's finding because I find that no genuine factual dispute exists on the issue in any event.

7. This statement is admissible against Citibank. F.R.Evid. 801(d)(2).

8. Both documents Citibank relies upon were submitted by Proulx.

employees have the right to file complaints ... Naturally, not all complaints have merit and employees are never discharged because they are unable to support their positions. *This instant case is distinguishable because the complainant made the accusation in bad faith,* (i.e., knowing it was untrue)" (emphasis supplied)

This statement merely reiterates what Proulx is willing to concede on this motion; that Citibank discharged him because he maliciously filed a sexual harassment claim falsely accusing Ganey. No dispute of fact is demonstrated by this statement.

The second document Citibank relies upon is the NYSDHR's finding of "no probable cause" with respect to the retaliation claim Proulx filed with the Agency.[9] The NYSDHR's decision on that claim, issued May 9, 1984, was based in its entirety on its finding that:

> "[Proulx's] allegations that he was retaliated against by termination and subsequently harassed by his former supervisor cannot be substantiated by the documentation provided by [Proulx]. The evidence in [sic] file does not substantiate the complaint's claims that he was discriminated against for having filed a prior Human Rights complaint."

This document is not evidence of the reason Citibank discharged Proulx, nor does it contradict Proulx's evidence that he was discharged for filing a malicious complaint of sexual harassment. It is evidence only that the NYSDHR did not consider the documents then before it as meeting the complainant's burden of proof. Absent any indication of what was in the NYSDHR file this determination is of no evidentiary value on the question at hand. The file may not even have contained the Unemployment Insurance Appeal Board's decision of September 27, 1983, quoted above, which finds that Proulx was discharged as a result of his complaint.

Citibank's burden at this procedural juncture is not to rebut plaintiff's evidence, but merely to show that a genuine factual dispute exists. *See Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). Citibank has not made that showing here, at least to the extent that Proulx is willing to adopt—for the purposes of this motion—Citibank's characterization of his complaint as malicious.

The absence of a genuine factual dispute is not itself dispositive of the instant motion. The moving party must also demonstrate that applicable law supports the entry of judgment in his favor. F.R.Civ.P. 56(e) ("... summary judgment, *if appropriate,* shall be entered ...") (emphasis supplied). Judgment for Proulx is "appropriate" only if he is entitled to protection against discharge for having made false and malicious accusations of sexual harassment contained in a NYSDHR complaint, a question to which I now turn.[10]

### III.

As far as the parties' and this Court's research reveals, neither the Supreme Court nor the Second Circuit have considered whether section 704(a)'s protection against retaliatory discharge extends to malicious claims of discrimination. Within this context, we may equate "malice" with known falsity.

That question is squarely presented at bar, because Proulx concedes for the sake of his motion that his claim was malicious; and Citibank concedes——nay, it . proclaims——that it discharged Proulx because he filed a malicious claim.

A leading text favors Proulx. Construing section 704(a), Schlei and Grossman, *Employment Discrimination Law* (2d ed. 1983), write at 541:

> "Protection is not lost if the employee is wrong on the merits of the charge. Nor is protection lost if the contents of the charge are malicious and defamatory as well as wrong." (footnotes omitted).

---

**9.** Attachment 15A to Proulx's application for appointment of counsel, now filed under seal.

**10.** I note that this is not a case where an employee is discharged for false and malicious accusations of sexual harassment that are separate and apart from allegations contained in a complaint of discrimination filed with an appropriate agency. I express no opinion on whether such an employee would have any right to recovery under § 704.

For the latter proposition, the sole authority cited by the authors is *Pettway v. American Cast Iron Pipe Co.*, 411 F.2d 998 (5th Cir.1969).

The facts in *Pettway* do not necessarily support so sweeping a declaration as the text writers derive from it. To be sure, Chief Judge Brown began his opinion by saying that *Pettway* involved the "unique question" under Title VII of whether a charge filed pursuant to section 704(a) "prohibits an employer from discharging an employee for having made false statements in a request for reconsideration of his case before the Equal Employment Opportunity commission claiming racial discrimination against him and fellow Negro employees." 411 F.2d at 999–1000. Ultimately the Fifth Circuit answered that question in the affirmative, and so the employee's retaliatory discharge was condemned under the statute. But the facts were somewhat complex.

The employee, one Wrenn, had filed with the EEOC a racial discrimination charge against his employer. The EEOC rejected the claim. Wrenn then wrote the EEOC a letter which the agency and subsequently the Court regarded as a timely request for reconsideration. In that letter, Wrenn stated six discrete claims. The first five comprised charges of discrimination or related activity which were cognizable under Title VII. His sixth claim charged, in substance, that the EEOC's prior adverse action resulted from the employer having bribed the agency investigating officer. Having received a copy of this letter, the employer discharged Wrenn for what it perceived to be the false and malicious content of the sixth claim. The Fifth Circuit assumed that the claim of corruption was in fact false and malicious. Nevertheless, the Court concluded that the employer violated section 704(a) when it discharged Wrenn for that reason.

In order fully to appreciate the Fifth Circuit's reaction to these facts, it is necessary to quote from Chief Judge Brown's opinion at some length:

"We hold that where, disregarding the malicious material contained in a charge (or petition for reconsideration or other communication with EEOC sufficient for EEOC purposes, or in a proceeding before EEOC) the charge otherwise satisfies the liberal requirements of a charge, the charging party is exercising a protected right under the Act. He may not be discharged for such writing. The employer may not take it on itself to determine the correctness of consequences of it. Nor may the court either sustain any employer disciplinary action or deny any relief because of the presence of such malicious material. We do not decide whether a writing purporting to be and to be used as charge, which does not meet the requisites of a charge such as is required to set the EEOC machinery in operation is protected. We leave that or another day and another court.

This letter ... for reconsideration was a good charge. In Parts [1], [2], [4], and [5] Wrenn, as Chairman of the Committee For Equal Job Opportunity clearly criticizes the internal operations of EEOC. Part [3] is a categorical allegation that Employer is violating the act and intends to continue to violate the act. Wrenn, and especially this Committee, were clearly entitled to make these charges. The District Judge did not say that Wrenn could be discharged for making these charges. With Parts [1], [2] [4] and [5] constituting arguably good charges deserving of EEOC investigations and later employee-instituted suit, the price is to high to permit the presence of Part [6] (later claimed or proved to be false or malicious) to allow the Employer to discharge the employee, and worse, throw out all of the charges with the awesome finality of a common-law demurrer. The Employee is not stripped of his protection because he says too much. If he says enough the Employee can suffer no detriment by virtue of having filed charges with EEOC which also contain false or malicious statements. By utilizing EEOC machinery he is exercising a protected right.

Since the Employee was discharged because he filed the charge and his request for reconsideration with EEOC, his dis-

charge was a violation of § 704(a) and he must be reinstated and afforded other appropriate relief including appropriate back pay and such further protective orders or injunctions as may be needed." *Id.* at 1007–1008 (footnotes omitted).

The factual differences between *Pettway* and the case at bar are apparent. In *Pettway* the employee's false and malicious claim was not cognizable under the statute, and was accompanied by five cognizable claims not suggested to be malicious. In the case at bar, Proulx concedes for the argument that his sole statutory claim was entirely malicious. Stressing certain statements in Chief Judge Brown's analysis, Citibank argues in the case at bar that their "clear implication ... is that an employee's dismissal would not violate section 704 where as is alleged here, the Title VII complaint that precipitated the dismissal is malicious in its entirety." Brief at 6.

Citibank also finds support in judicial expressions which appear in *Benson v. Little Rock Hilton Inn,* 742 F.2d 414, 417 n. 5 (8th Cir.1984), and *Rucker v. Higher Educational Aids Board,* 669 F.2d 1179, 1182 (7th Cir.1982). However, these are "opposition" cases as opposed to "participation" cases, a distinction which Schlei and Grossman, *op. cit. supra,* explain at 533:

> "It is essential to the analysis of § 704(a) to recognize its two different clauses: Discrimination by the specified respondents is forbidden against a specified type of person:
>
> (1) 'because he has opposed any practice made an unlawful employment practice by this title' (the 'opposition' clause); or
>
> (2) 'because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title" (the 'participation' clause)." (footnotes omitted).

The distinction is significant because the levels of statutory protection differ. Courts give "basically absolute protection for 'participation' conduct", whereas "the degree of protection for an employee's conduct 'opposing an unfair employment practice' is less clear, but certainly more narrow." *Benson, supra,* at 742 F.2d 421 (Heaney, C.J., dissenting).

The case at bar is unquestionably a "participation" case.[11]

Therefore the question, apparently one of first impression, that arises is whether section 704(a) protects from retaliatory discharge an employee who files an entirely malicious and false claim with the EEOC or other authorized agency.

## IV.

There can be no middle ground. Section 704(a) prohibits discrimination by an employer against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. That language either embraces and consequently protects malicious claims, or it does not.

Whichever interpretation is adopted, a potential for abuse arises.

To extend the statute's protection to malicious claims runs the obvious risk of licensing, if not encouraging, bad faith discrimination claims by trouble-making, obstructionist employees bent upon harassment. Could Congress, one wonders, really have had this in mind?

On the other hand, to hold in principle that section 704(a) does not cover malicious claims would in practice sanction employers reacting to a presumably unwelcome discrimination claim just as Citibank reacted in the case at bar: making a unilateral determination that the employee's claim was malicious, and discharging him in con-

---

**11.** Even less apposite to the case at bar are those cases construing the National Labor Relations Act and the Fair Labor Standards Act, cited by Citibank in its brief at 9–10. "The protective provisions of Title VII are substantially broader than even those included in the Fair Labor Standards Act and the National Labor Relations Act in that, in addition to protecting charges and testimony, Title VII also specifically protects assistance and participation." *Pettway, supra* at 1006 n. 18.

sequence. One wonders again, could Congress really have intended that?

The legislative history of section 704(a) does not address the phenomenon of the malicious claim. But legislative history need not be consulted where the statutory language is plain; and here the Act protects employees who participate "in *any* manner" in Title VII proceedings (emphasis added).

Thus there is a "plain language" argument available to Proulx in the case at bar. However, a stronger argument emerges from the manifest purpose of section 704(a) and its effect upon risk allocation. Chief Judge Brown dealt with that subject in *Pettway* at 1004–1005:

"There can be no doubt about the purpose of § 704(a). In unmistakable language it is to protect the employee who utilizes the tools provided by Congress to protect his rights. The Act will be frustrated if the employer may unilaterally determine the truth or falsity of charges and take independent action."

Jude Weinfeld cited that passage from *Pettway* when he wrote in *EEOC v. Kallir Philips, Ross, Inc.*, 401 F.Supp. 66, 72 (S.D. N.Y.1975), *relief determined,* 420 F.Supp. 919 (1976), *affirmed,* 559 F.2d 1203 (2d Cir.), *cert. denied,* 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977);

"Section 704(a) is to be broadly construed to protect the rights of employees under Title VII. The Act contemplates that employees who may feel aggrieved because of alleged discriminatory conduct will initiate and participate in the process to vindicate their rights without fear of reprisal. Since the enforcement of Title VII rights is necessarily dependent on individual complaints, freedom of action by employees presenting grievances to agencies must be protected against the threat of retaliatory conduct by employers who may resent that they are charged with discrimination." (footnotes omitted)

While *Kallir* did not involve a malicious claim, Judge Weinfeld captures the spirit of section 704(a).

Given the remedial nature of Title VII, I am unable to conclude that section 704(a)'s protection falls short of malicious discrimination claims. While protection of malice in any form is at first blush unappealing, the practical consequences of a contrary conclusion in the Title VII context persuade me that plaintiff's statutory interpretation must be accepted.

It does not follow that an employer made the object of a malicious discrimination claim is necessarily without legal remedy. At least in the Fifth Circuit's view, the employer may sue his malicious employee for defamation.[12] The Fifth Circuit made that clear in *Pettway* at 1007 n. 22:

"We in no way imply that an employer is preempted by Section 704(a) from vindicating his reputation through resort to a civil action for malicious defamation. *Cf. Linn v. Plant Guard Workers,* 1966, 383 U.S. 53, 86 S.Ct. 657, 15 L.Ed.2d 582 (LMRA); *Salzhandler v. Caputo,* 2 Cir. 1963, 316 F.2d 445 (LMRDA). An employer, consistent with the language and the intent of Title VII, simply cannot avail himself of the retributive discharge as a means of stifling minority group complaints to the EEOC. It may safely be assumed, though we do not so decide in the context of this case, that the malice test established in *Linn* would govern any libel action stemming from an EEOC proceeding in order to guard against possible abuse of such actions. 383 U.S. at

**12.** The viability of an employer's suit for defamation against a charging employee within the context of Title VII does not appear to have engaged the attention of the Supreme Court or the Second Circuit. *Compare EEOC v. Levi Straus & Co.,* 515 F.Supp. 640 (N.D.Ill.1981) (employer's state court defamation suit against charging employee enjoined on application of EEOC during pendency of the charge), with *EEOC v. Virginia Carolina Veneer Corp.,* 495 F.Supp. 775, (W.D.Va.1980) (EEOC granted order against employer directing employer to take a nonsuit of its state defamation action against employee). While I need not and do not decide the issue in the present posture of the case at bar, the District Court in *Levi Straus, supra,* is surely correct in observing at 644: "There is no authority for the proposition that Title VII, *sub silentio,* preempts all state defamation proceedings. Rather the exact opposite was recognized in *Pettway v. American Cast Iron Pipe Co.,* 411 F.Supp. 998, 1007 (5th Cir.1969)."

64–65, 86 S.Ct. 657. *See New York Times Co. v. Sullivan,* 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

That footnote which, appears partway through the extended quotation from Chief Judge Brown's opinion *supra,* supports that broader interpretation of *Pettway* adopted by Schlei and Grossman, namely, that section 704(a) protects malicious EEOC claims. Notwithstanding certain phrases that may be read to point in a different direction, I find the dispositive holding in *Pettway* to be stated in the Court's declaration at 1007: "Since the employee was discharged because he filed the charge and his request for reconsideration with EEOC, his discharge was a violation of § 704(a) ..."

■ While I am not bound by Fifth Circuit authority, I agree with that Court's conclusion, as I construe it, that where an employee files with an appropriate agency a Title VII discrimination claim which, albeit false and malicious, facially falls within the statute, the employer is forbidden by section 704(a) from unilaterally discharging the employee because of the filing or prosecution of the claim. The employer's remedy is to defeat the employee's claim on its merits (a foregone conclusion on these assumptions), and then, if so advised for purposes of specific or general deterrence, attempt a suit against the employee for defamation. The contrary interpretation of section 704(a) would as a practical matter severely impair the functioning of this important civil rights statute.

### V.

■ Having concluded that Citibank's retaliatory discharge of plaintiff Proulx violated Title VII, it follows that plaintiff is entitled to summary judgment against defendant on the issue of liability.

Issues of the form and amount of plaintiff's relief remain. Relevant considerations are comprehensively discussed by Judge Weinfeld in *Kallir, supra,* at 420 F.Supp. 919–926. I direct counsel for the parties to meet together in a good faith effort to settle these issues so that a final judgment may enter. Such settlement, if accomplished, would of course be without prejudice to defendant's right to appeal from the judgment on liability. If the parties cannot so agree, the relief aspect of the case will be referred to a Magistrate for the taking of evidence, recommendation and report, after a status conference has taken place before his court.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

1. The Clerk of the Court is directed to enter summary judgment in favor of plaintiff and against defendant on the issue of liability only in 85 Civ. 4348.

2. Counsel for the parties are directed to enter forthwith into good faith efforts to agree upon the form and amount of the relief to which plaintiff is entitled; provided, however, that such settlement, if accomplished, will be without prejudice to defendant's right to appeal from the foregoing summary judgment if so advised.

3. Counsel for the parties, after conducting such discussions, are directed to appear for a status conference on June 10, 1987 at 4:30 p.m. in courtroom 307.