# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2460

_____

Randy Gilooly,                                  *
                                                *
          Plaintiff-Appellant,                  *
                                                *  Appeal from the United States
     v.                                         *  District Court for the Eastern
                                                *  District of Missouri.
Missouri Department of Health and               *
Senior Services, Division of Senior             *
Service; Missouri Department of Social          *
Service, Division of Aging; Betty               *
Bolden; Jennifer Sutton; Gladys Hood;           *
Helen Edwards-Matthews; Bonnie                  *
Eulinberg; Karen Hollering; Linda               *
Allen; Sandra Lewis,                            *
                                                *
          Defendants-Appellees.                 *

_____

Submitted: January 13, 2005
Filed: August 31, 2005

_____

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Randy Gilooly filed an employment discrimination suit in federal court pursuant to Title VII and 42 U.S.C. § 1983, and under state law pursuant to the district court's supplemental jurisdiction, against the Defendant-Appellees

(collectively, the "Appellees"). Gilooly appeals the district court decision granting summary judgment to the Appellees. We affirm in part and reverse and remand in part.

## I.

Gilooly was employed by the Missouri Department of Health and Human Services, Section for Senior Services [Division of Aging] (hereafter "DoA").[1] At the DoA, defendant Gladys Hood supervised Gilooly and defendants Jennifer Sutton and Betty Bolden. Effective March 12, 2001, Gilooly was granted a transfer from his position under Hood in Mississippi County to a similar position in Cape Girardeau County. Defendant Helen Edwards-Matthews was Gilooly's supervisor at the new location. Defendant Bonnie Eulinberg was the regional manager for both counties in which Gilooly worked.

Before Gilooly's transfer, during his exit interview, Gilooly told Hood that Sutton and Bolden engaged in conduct that made it necessary for him to transfer. Specifically, Gilooly alleged that Sutton was frequently around his desk and that she had said she was attracted to him. He also complained that Bolden made unannounced visits to his home. Gilooly admitted that he had a relationship with Bolden previously. Gilooly stated that personal problems between Bolden and him were making it difficult for him to perform his job. Gilooly said that he needed a transfer because Bolden and Sutton had become "overly dependent on him." At the time of the exit interview, Gilooly did not file any sexual harassment complaint.

---

[1] The name of the agency in question has undergone several changes and has been given different names by the parties and courts involved in the matter. The parties' briefs refer to the agency as the Department of Health and Senior Services whereas the caption of this Court uses Department of Health and Human Services. For purposes of this opinion, we use the full name identified in the caption of the court and adopt the abbreviation used by the district court.

During meetings with Hood, both Bolden and Sutton confessed to having relationships with Gilooly. Gilooly denied a current relationship with either woman.

On May 8, 2001, Gilooly and his girlfriend, Angie Decker, who was not an employee of the DoA, visited a client in a mental hospital. The visit was unauthorized because Gilooly had not obtained supervisor approval. During an inquiry about the visit, it was discovered that this was not Gilooly's first unauthorized visit with the client. Gilooly had also given the client a can of pepper spray even though she was a known self-mutilator. Edwards-Matthews and Eulinberg recommended discipline for Gilooly's misconduct.

On May 30, 2001, Gilooly wrote a reply to the disciplinary recommendation. In the reply, he alleged that the disciplinary recommendation was in retaliation for his report of sexual harassment during his exit interview, though he had never actually filed a sexual harassment complaint. On July 6, 2001, defendant Karen Hoellering, a DoA human resources manager, issued a suspension letter to Gilooly. He was suspended without pay for five days for his unauthorized visit, giving the pepper spray, and his uncooperative attitude after the disciplinary report was issued. Hoellering also learned, but did not base her decision upon the fact, that Gilooly had exchanged personal emails on state time and equipment with at least eight women.

On July 12, 2001, Gilooly and his union representative met with Edwards-Matthew and Eulinberg regarding the suspension. On July 27, 2001, Gilooly filed a charge of discrimination with the Missouri Commission on Human Rights. On August 9, 2001, Gilooly filed a grievance review request alleging sexual harassment and unlawful retaliation in violation of Title VII. In his request, Gilooly alleged that Bolden and Sutton had engaged in a range of inappropriate conduct toward him. Specifically, he alleged that Sutton had hugged him in an inappropriate manner, distracted him from his work by visiting his desk, and made unwanted advances toward him. He also alleged that Bolden had made unannounced visits to his home

-3-

and also distracted him from working. Defendant Sandra Lewis of the Office of Civil Rights of the Department of Social Services was charged with investigating Gilooly's claims. On September 17, 2001, the Office of Civil Rights issued its report and did not support Gilooly's allegations. On September 26, 2001, Gilooly's administrative appeal of his suspension was heard and denied. On October 25, 2001, Gilooly was fired, effective November 7, 2001.

The termination letter stated that "[t]he reason for [Gilooly's] dismissal [was] that [he] made false statements during the investigation and grievance hearing which followed [his] accusations against two former co-workers." The letter identified several areas where it was alleged that Gilooly had deceived investigators. First, it alleged that Gilooly had falsely denied "personal relationships beyond friendship" with several former co-workers. In the letter, "Jennifer," "Betty," and "ClaraE" are identified as three women who alleged having had relationships with Gilooly, but with whom Gilooly had either denied or refused to answer whether he was involved in a sexual manner. Second, the termination letter stated that Gilooly's allegation that "Jennifer" and "Betty" had prevented him from doing work by distracting him was false because they had told investigators that they had actually been doing Gilooly's work. Third, eyewitness accounts of particular events allegedly contradicted Gilooly's statements. For each of these allegations, the termination letter did not cite any documentation beyond the testimony of other employees and witnesses. The letter also recounted the events that led to Gilooly's suspension.

On November 26, 2001, Gilooly appealed his termination to the Personal Advisory Board, but it upheld the termination. On January 13, 2002, Gilooly filed a second complaint with the Missouri Commission on Human Rights. In the second complaint, Gilooly alleged that his firing was retaliatory. Again, the commission did not find Gilooly's allegations to be credible.

Gilooly then filed a sexual harassment lawsuit in federal court that is the basis for this appeal. The district court granted summary judgment for the defendant on all claims. On appeal, Gilooly argues that the district court erred in finding that he had failed to establish a prima facie case of: 1) hostile work environment; 2) disparate treatment; and 3) unlawful retaliation. We address each of Gilooly's arguments in turn.

## II.

The standard of review for a grant of summary judgment is de novo. Allen v. City of Pocahontas, Ark., 340 F.3d 551, 554-55 (8th Cir. 2003). To succeed against a motion for summary judgment in a case like this one, the plaintiff must present sufficient evidence to create a genuine issue of material fact. Jetton v. McDonnell Douglas Corp., 121 F.3d 423, 425 (8th Cir. 1997). In reviewing the judgment of the district court, we must view all evidence "'in the light most favorable to the nonmoving party.'" Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 478 (8th Cir. 2004) (quoting Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003)).

## III.

Gilooly argues that the Appellees were not entitled to summary judgment as to his hostile work environment claim. To establish a claim of hostile work environment, a plaintiff must show that: (1) he or she was a member of a protected group; (2) he or she was subjected to unwelcome harassment in the workplace; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action. Alagna v. Smithville R-II, 324 F.3d 975, 979 (8th Cir. 2003); Scusa v. Nestle U.S.A. Co., 181 F.3d 958, 965 (8th Cir. 1999).

Because we agree with the district court that Gilooly is unable to prove any material fact question as to the fourth element, we need not discuss the other elements. To establish the fourth element, a plaintiff must be prove that the harassment was "so severe or pervasive as to alter a term, condition, or privilege of employment." Scusa, 181 F.3d at 967. The conduct at issue must not be "merely rude or unpleasant." Alagna, 324 F.3d at 980. A plaintiff must establish harassment that is "so intimidating, offensive, or hostile that it 'poisoned the work environment.'" Scusa, 181 F.3d at 967 (quoting Scott v. Sears, Roebuck & Co., 798 F.2d 210, 214 (7th Cir. 1986)). A plaintiff must be able to show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted).

In the present matter, there is no evidence of conduct rising to the level of "severe or pervasive" harassment. At most, Gilooly has alleged that he was uncomfortable with Bolden and Sutton's advances toward him. He does not cite any instances of conduct by them that could rise to the level required by Title VII. Gilooly's claim that there were frequent desk visits, unannounced visits to his home, and that Bolden and Sutton were "overly dependent" on him do not constitute sexual harassment under existing law. While Gilooly may have had a belief that such conduct constituted sexual harassment, it is not sufficient as a matter of law. Accordingly, we affirm the judgment of the district court as to the hostile work environment claim.

IV.

Gilooly also appeals the decision of the district court regarding his disparate treatment claim. This claim relates to the May 2001 suspension for the unauthorized visit to the client in a mental hospital. To establish a disparate treatment claim, a plaintiff must show that: (1) he or she is a member of a protected class; (2) he or she was meeting the legitimate expectations as to his her duties; (3) he or she suffered an

-6-

adverse employment action; and (4) "circumstances give rise to an inference of discrimination as similarly situated employees, who were not members of the protected group, were treated differently." Jacob-Mua v. Veneman, 289 F.3d 517, 521-22 (8th Cir. 2002).

In this case, Gilooly argues that Bolton lied about her sexual relationship with him, later changed her account of events, but was not similarly punished. Further, he argues that Sutton was accused of similar confidentiality infractions, but was only reprimanded.

Since we agree with the district court that Gilooly did not offer any material facts relevant to the fourth element, we need not discuss the other elements here. To meet the fourth element in a disparate treatment claim, a plaintiff must show that other employees outside of the protected group were allegedly treated more favorably and were "similarly situated in all relevant respects." Pope v. ESA Servs., 406 F.3d 1001, 1009 (8th Cir. 2005). In this case, Sutton and Bolton did not engage in the same conduct as Gilooly. There is no evidence to suggest that Sutton and Bolton violated confidentiality, conflict of interest, and reporting rules. As a result, the cumulative accusations against Gilooly were more severe, and he has failed to identify any similarly situated employees of the opposite sex who were treated preferentially. See Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001) (finding that employees were not similarly situated because of different degrees of misconduct).

V.

Gilooly also argues that his termination and suspension were impermissible retaliation actionable under Title VII. Title VII makes it unlawful for an employer to discriminate against an employee for "oppos[ing] any practice made unlawful by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To prove a retaliation claim, a plaintiff must show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events. Rheineck v. Hutchinson Tech., Inc., 261 F.3d 751, 757 (8th Cir. 2001). The defense may rebut a plaintiff's claim by advancing a legitimate, "non-retaliatory reason for the adverse employment action." Id. If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination. Id. To establish a retaliation claim, a plaintiff need not succeed on the underlying harassment claims. Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997).

Here, Gilooly alleges that his suspension and termination were two separate adverse employment actions. Regarding his suspension, we agree with the district court that Gilooly presented insufficient evidence of causation to establish a claim of retaliation.

Turning to his termination, the district court concluded that there was no causal link between the reporting of sexual harassment and Gilooly's discipline and termination. We disagree.

To prove a causal connection under the third element, a plaintiff must prove that an employer's retaliatory motive played a part in the adverse employment action. Kipp v. Missouri Highway & Transp. Comm'n., 280 F.3d 893, 896-97 (8th Cir.

-8-

2002). "[E]vidence that gives rise to an inference of a retaliatory motive on the part of the employer is sufficient to prove a causal connection." Id. at 897 (internal quotation marks omitted).

The district court found that Gilooly's termination was caused by his unauthorized visit to a client with a non-DoA employee. However, because those responsible for his firing expressly denied that the previous incident was the justification for his termination, and that the termination letter received by Gilooly describes his conduct during the investigation as the basis for his firing, we disagree with the district court's conclusion that the "plaintiff has not presented evidence that his termination was for any reason than for violation of policy." The termination letter clearly stated as reasons for termination, Gilooly's conduct and deception during the sexual harassment investigation. The employer relied on a letter from a state agency investigator who alleged that Gilooly had lied during the investigation. There is no evidence that indicates Gilooly had been caught in a clear, unequivocal lie, but, rather, the evidence shows that the investigator had found Gilooly to be less credible than the other witnesses. Taking the termination letter in a light most favorable to Gilooly and for the reasons discussed below, we conclude that this case gives a necessary inference of retaliatory motive.

Because we believe Gilooly has met the elements of a retaliation claim for purposes of surviving a motion for summary judgment, the question we must address is whether, given the facts of this case, Gilooly was fired for legitimate, non-discriminatory reasons. It cannot be the case that any employee who files a Title VII claim and is disbelieved by his or her employer can be legitimately fired. If such were the case, every employee could be deterred from filing their action and the purposes of Title VII in regards to sexual harassment would be defeated. However, it also cannot be true that a plaintiff can file false charges, lie to an investigator, and possibly defame co-employees, without suffering repercussions simply because the investigation was about sexual harassment. To do so would leave employers with no

ability to fire employees for defaming other employees or the employer through their complaint when the allegations are without any basis in fact.

These scenarios represent two extremes. Differentiating individual cases between the two extremes is a difficult endeavor at the summary judgment stage. Nonetheless, we previously addressed this issue and found that the reasons for firing must be "sufficiently independent from the filing of the complaint to constitute legitimate and nonretaliatory reasons for discharge." Womack v. Munson, 619 F.2d 1292, 1297 (8th Cir. 1980). Further, questions related to the very substance of the investigation are "not sufficiently independent" and therefore, within the scope of the protected activity. Id. Specifically, an investigator's "independent determination of truth or falsity of [the plaintiff's] allegation . . . [can]not legally be grounds for discharge." Id. at 1298. However, if the false statements are "not part of the protected activity," then they can be legitimate reasons for termination. Sweeney v. City of Ladue, 25 F.3d 702, 704 (8th Cir. 1994) (holding that a related third party's lies during an investigation were not protected activity).

In this case, the investigator's belief that Gilooly was lying was the basis for the DoA's decision to fire Gilooly. According to the termination letter, the belief that Gilooly was lying was founded solely on the statements of other employees and witnesses.[2] The letter contained no independently verifiable evidence that contradicted Gilooly's allegations. Without such additional corroboration, the

---

[2] It may be argued that independent corroboration can be provided by testimony from neutral non-parties. Assuming that to be true, that is not our case. Co-workers who were not the subject of the complaint were interviewed. However, their statements tended to corroborate some of Gilooly's allegations, such as the claim that both Bolden and Sutton would sit at Gilooly's desk. The "contradictions" dealt with minor, inconsequential details. The eyewitness testimony as related in the termination letter does not rise to the level of independent corroboration.

statements in the termination letter amount to little more than a description of conflicting stories with the employer disbelieving Gilooly's version of the events.

This judgment of assessing witness credibility is normally the province of a fact-finder at a sexual harassment trial. Allowing the employer's investigation to essentially short-circuit the retaliation claim before it begins is antithetical to the design of Title VII. Had the investigator found a clearer record of deception and detailed the basis for such findings, a court could find that the firing was not for protected conduct. However, in this case, the question is largely undeveloped and best left to a fact-finder to decide. As a result, we conclude the district court erred in granting summary judgment as to Gilooly's retaliation claim concerning his termination.

## VI.

For the foregoing reasons, we affirm as to Gilooly's hostile work environment and disparate treatment claims. However, we reverse and remand concerning the retaliation claim as to Gilooly's termination and any claims to which the district court may exercise supplemental jurisdiction.

COLLOTON, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court correctly granted summary judgment dismissing Randy Gilooly's claims alleging sex discrimination based on a hostile work environment and disparate treatment.  However, given the court's conclusion, with which I agree, that false statements made in an investigation of alleged sex discrimination can be a basis for dismissal of an employee (and thus are not protected "opposition" or "participation" in a sexual harassment investigation), the district court's dismissal of Gilooly's retaliation claim also should be affirmed.  The Missouri Department of Health and Senior Services (DHSS) indisputably terminated Gilooly based on a reasonable, good faith belief that Gilooly filed false sexual harassment charges, and then gave false testimony in relation to those charges.  As such, the termination did not constitute discrimination against Gilooly because of opposition or participation that is protected under Title VII.

Title VII makes it an "unlawful employment practice" for an employer "to discriminate" against an employee "[1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. The two clauses of this section typically are described, respectively, as the "opposition clause" and the "participation clause."  In considering a claim of unlawful retaliation, it is important to determine whether the conduct of the employee at issue constitutes "opposition" under the first clause, "participation" under the second clause, or activity not covered at all, because the analysis of an employer's action may differ depending on the nature of the employee's conduct.

The opposition clause protects an employee against discrimination because he has "opposed" any practice "made an unlawful employment practice" by Title VII. Our court, like other circuits, has interpreted this provision more broadly than its

-12-

plain language might suggest. The clause encompasses actions that "oppose" employment practices that are unlawful, but also includes opposition to practices that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful. *EEOC v. HBE Corp.*, 135 F.3d 543, 554 (8th Cir. 1998); *Evans v. Kansas City, Mo. Sch. Dist.*, 65 F.3d 98, 100 (8th Cir. 1995). Our court followed a decision of the Seventh Circuit, which acknowledged that a literal reading of the opposition clause would result in a narrower scope, but which concluded that broader protection was consonant with the true intent of Congress and necessary to further the central purpose of Title VII. *Berg v. LaCrosse Cooler Co.*, 612 F.2d 1041, 1045-46 (7th Cir. 1980). The Supreme Court recently noted this interpretation, but had no occasion to rule on whether it was proper. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (per curiam).

The text of the "participation clause," by contrast, does not connect the protected activity to the unlawfulness of any employment practice. In one respect, therefore, the plain language of the clause sweeps more broadly than the opposition clause, forbidding discrimination because of "participation in any manner" in an investigation under Title VII. At the same time, however, the clause protects only participation "under this subchapter," so participation in an employer's internal investigation that is independent of the "subchapter," *i.e.*, not pursuant to an investigation by the EEOC or its designee, is not covered. *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990); *see also Brower v. Runyon*, 178 F.3d 1002, 1006 (8th Cir. 1999). When the employee is participating in an EEOC investigation, however, the broad formulation of the clause has led some courts to say that it protects even false and malicious allegations, or the filing of frivolous complaints. *E.g.*, *Pettway v. Am. Cast Iron Pipe Co.*, 411 F.2d 998, 1007 (5th Cir. 1969); *Proulx v. Citibank, N.A.*, 659 F. Supp. 972, 977-78 (S.D.N.Y. 1987); *see also Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000) (dicta); *Womack v. Munson*, 619 F.2d 1292, 1298 & n.10 (8th Cir. 1980) (dicta).

The majority, *ante*, at 9-10, rejects this "extreme level of protection for untruth," *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1175 (11th Cir. 2000), and although there is a respectable textual argument for the contrary view, I ultimately agree with the court's conclusion. The court implicitly follows the reasoning of the Seventh Circuit in *Mattson v. Caterpillar, Inc.*, 359 F.3d 885 (7th Cir. 2004), which held that "the same threshold standard should apply to both opposition and participation clauses," *id.* at 891 – that is, "utterly baseless claims do not receive protection under Title VII." *Id.* at 890. Rather, an employee must "reasonably believe in good faith" that he has suffered discrimination before his "participation" falls within the scope of § 2000e-3. *Id.* at 890. Whatever might be the plain meaning of the participation clause standing alone, we must interpret it today in the context of an opposition clause that has been read to protect reasonable, good faith opposition to an employer's practices, but not false allegations. As the *Mattson* court observed, if we were now to adopt a different standard for the participation clause, "an employee could immunize his unreasonable and malicious internal complaints simply by filing a discrimination complaint with a government agency," and "an employee could assure himself unlimited tenure by filing continuous complaints with the government agency if he fears that his employer will discover his duplicitous behavior at the workplace." *Id.* at 891.

The question then arises, who decides whether the employee has made false and malicious allegations? With respect to acts analyzed only under the opposition clause, it has been recognized that an employer may properly carry out a termination based on the employer's good faith belief that an employee lied in an internal investigation.[3] As the Eleventh Circuit explained, "[w]hen the resulting employer's

[3]The first ground listed by the DHSS in its termination letter involved statements made by Gilooly in an internal grievance hearing. The hearing was triggered by an internal grievance filed by Gilooly, and was conducted independent of the investigation of Gilooly's complaint filed with the Missouri Commission on Human Rights (MCHR), a designee of the Equal Employment Opportunity

-14-

investigation (not tied to the government) produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions – that is, to accept one as true and to reject one as fictitious – at least, as long as the choice is an honest choice." *Total Sys. Servs.*, 221 F.3d at 1176. This is a business judgment by the employer, and "[i]n the workaday world, not every personnel decision involving a false statement (or a cover-up) has to be treated as something like a trial for perjury." *Id.*; *see also Wilson v. UT Health Center*, 973 F.2d 1263, 1268 (5th Cir. 1992) (stating that Title VII does not "prevent an employer from making a disciplinary decision based on its evaluation of the veracity of an employee's allegations that concern an activity that Title VII protects, such as complaints about sexual harassment").

In terms of the text of the statute, an employee who makes false allegations has not "opposed any practice made an unlawful employment practice," because only good faith, reasonable opposition is protected by the statute. *Evans*, 65 F.3d at 100; *cf. Breeden*, 532 U.S. at 270. It follows, then, that a company that terminates an employee based on a good faith belief that he made false allegations has not discriminated against the employee "*because he has opposed* any practice made an unlawful employment practice." Rather, the employer has acted because it believed that the employee made false and malicious allegations, and thus did not *believe* that the employee was engaged in protected "opposition." Of course, if the employer has no good reason to conclude that the employee's allegations were knowingly false and malicious, then there will be a genuine issue as to whether the employer's stated reason for termination is a pretext for unlawful retaliation for protected activity. But whether a judge or jury might later disagree with the employer's good faith conclusion about falsity is not dispositive, because whether the employer

---

Commission. (Appellant's App. 93). Gilooly's conduct in the grievance hearing, therefore, was governed only by the opposition clause. *See Vasconcelos*, 907 F.2d at 113.

discriminated unlawfully depends on the employer's beliefs and motivation. *See Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) (holding that Title VII plaintiff must show that "retaliatory motive played a part in the adverse employment action") (internal quotation omitted); *Scroggins v. Univ. of Minn.*, 221 F.3d 1042, 1045 (8th Cir. 2000) (holding that the "relevant inquiry" in retaliation case is whether the employer *believed* the employee was guilty of the conduct justifying discharge) (internal quotation omitted); *Scott v. County of Ramsey*, 180 F.3d 913, 917 (8th Cir. 1999) ("[T]he ultimate burden of persuasion remains with the plaintiff to show that the termination was motivated by intentional retaliation.").

The motivation of the employer also should be determinative with respect to disciplinary actions taken based on statements in an investigation governed by the participation clause.[4]  Once it is acknowledged, as does the majority, that an employee who makes knowingly false allegations in an investigation has not "participated" in a way that is protected under § 2000e-3, then the statute gives no indication that a court should treat the question of the employer's motive differently under the opposition and participation clauses.  Both clauses prohibit discrimination "because" an employee has engaged in protected activity.  Once the scope of "opposition" and "participation" has been defined to exclude false and malicious allegations, an employer acting on that basis does not discipline the employee "because he has opposed" or "because he has participated" in a way that is protected

---

[4]The second and third grounds listed by the DHSS in its termination letter involved statements made by Gilooly in his MCHR complaint and to an investigator from the DHSS's Office of Civil Rights, who was assigned to conduct an investigation in light of Gilooly's complaint to the MCHR. (Appellant's App. at 93-94, 180).  These statements likely should be analyzed under the participation clause. *See Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1352-53 (11th Cir. 1999) (holding that statements made to internal investigator of employer were made in an investigation "under this subchapter" where investigation was pursuant to a charge filed with EEOC); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003).

by the statute.[5]  The employer is motivated by its conclusion that the employee committed unprotected misconduct, not by the fact that an employee engaged in protected activity.

In Gilooly's case, there is no genuine dispute that the DHSS terminated Gilooly based on a reasonable, good faith belief that he made false statements both in an internal investigation and in connection with a proceeding before the Missouri Commission on Human Rights, together with his previous inappropriate involvement in the case of a mentally disturbed client, which led to a suspension.  The DHSS explained to Gilooly that "[e]veryone is entitled to their opinions and perceptions, but to file false sexual harassment complaints against people with whom you had consensual sexual relations, and then to provide false statements throughout the investigative and hearing process is reprehensible."  (Appellant's App. at 94).  Gilooly's termination was upheld by the Personnel Advisory Board of the State of Missouri, which concluded that Gilooly "lied during his second grievance investigation," that he "lied as an offensive tactic to intimidate" two female co-workers, and to "try to get his suspension rescinded." (Appellee's App. at 147).[6]  The

_____

[5]The Eleventh Circuit in *Total System Services* limited its holding on this point to cases arising under the opposition clause, but that court was bound by precedent holding that even false statements were protected activity under the participation clause.  221 F.3d at 1175 (citing *Pettway*, 411 F.2d at 1007).  Our court today rejects that view, and concludes instead that false statements in an EEOC investigation can be grounds for dismissal.  *Ante*, at 9.

[6]In explaining its conclusion, the Board reasoned:

> [I]t does not make sense for two different women, one who since March 2001 was patching up her marriage, to engage in a coordinated detailed fictional account of their relationships if [Gilooly] had only been friends with them. Their responses are extreme for two women who have simply misunderstood [Gilooly's] helpfulness and

-17-

Board found that Gilooly "lied about matters very serious and deeply personal to others," and that the DHSS "need not be forced to employ in such a sensitive position someone who has shown a high level of willingness to lie persistently and in formal situations about such serious matters." (*Id*.).

The DHSS discharged Gilooly based on its good faith and well founded belief that he made false statements, and not "because he has opposed" an unlawful employment practice or "because he has made a charge, testified, assisted, or participated in any manner" in an investigation under Title VII, as the scope of those clauses is defined today by the court. Therefore, I would affirm the judgment of the district court.

_____

sympathetic ear. Their reactions are more typical of people who had been romantically and sexually involved. Moreover, [Gilooly's] repeated explanation that the women were psychotic and delusional is not backed up by any objective evidence, medical or otherwise.

(J.A. 146).